**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

---

LEE ACKERMAN,

               **Plaintiff,**

-against-

NATHAN BUTWIN COMPANY INC. d/b/a
BUTWIN INSURANCE GROUP, and
RICHARD BUTWIN,

               **Defendants.**

---

**Case No.  26 Civ. 2180**

## COMPLAINT

Plaintiff Lee Ackerman ("Ackerman"), by and through her attorneys, Kessler Matura P.C., complaining of Defendant Nathan Butwin Company Inc. d/b/a Butwin Insurance Group ("Butwin Insurance Group") and Richard Butwin, alleges as follows:

## INTRODUCTION

1.    Ackerman spent fifteen years building a career as a licensed insurance broker, earning a reputation for exceptional client service and consistent results. When Butwin Insurance Group hired her in April 2022 as an Account Executive, she delivered on that reputation—growing her book of business, earning annual raises, receiving positive performance reviews, and drawing praise from her supervisors and clients alike.

2.    In May 2024, Ackerman was diagnosed with tonsil cancer. She told Richard Butwin and a Butwin Insurance Group supervisor immediately. Ackerman worked through the early weeks of a brutal treatment regimen—seven weeks of radiation and six weeks of chemotherapy—and took disability leave only when the physical toll made client calls impossible. She returned to work in September 2024, resumed her full remote workload, and continued to perform. In April 2025,

two months before her termination, Butwin Insurance Group gave her a raise and a benefits enhancement. Ackerman's manager told her team they were "rockstars."

3.    None of that mattered to Richard Butwin. Rather than engage in any meaningful discussion about accommodating Ackerman's modest request to continue working remotely—the same arrangement he permitted her manager and other colleagues—Richard Butwin called her into his office to tell her she "look[ed] like shit" and that she had "lost [her] ass." He barred Ackerman from working remotely two days a week despite her doctor's recommendations and despite allowing others on her team to do exactly that.

4.    On June 6, 2025, Richard Butwin fired Ackerman during a meeting that she recorded. He opened with "shit happens." He told Ackerman that her medical condition "is starting to affect [her] work" and that she was "not the same mentally." Richard Butwin cited client complaints about Ackerman's concentration—complaints no one had ever mentioned to her, including in the positive performance review she had received eight weeks earlier. At the end of the meeting, he told her, "I am not firing you, I think this is best for you."

5.    It was not. Butwin Insurance Group's conduct violated the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101, *et seq.* ("ADA"), and Defendants' conduct violated the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.* ("NYSHRL").

## **NATURE OF THE CLAIMS**

6.    The disability discrimination described herein violated the ADA and the NYSHRL.

7.    Ackerman timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of the ADA.

8.     Ackerman's EEOC Charge was cross-filed with the New York State Division of Human Rights.

9.     The EEOC issued Ackerman a Notice of Right to Sue Letter.

10.     This action was commenced within 90 days of the issuance of the Notice of Right to Sue.

## JURISDICTION & VENUE

11.     Jurisdiction of the Court over this controversy is based upon 42 U.S.C. § 12101, *et seq.*

12.     This Court has supplemental jurisdiction over Ackerman's state law claim pursuant to 28 U.S.C. § 1367(a).

13.     Venue is proper within this Judicial District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims herein occurred in the Eastern District of New York.

## THE PARTIES

### *Plaintiff Lee Ackerman*

14.     Ackerman is a resident of Nassau County, New York.

15.     At all times relevant, Ackerman was an "employee" within the meaning of 42 U.S.C. § 12111(4), and the N.Y. Exec. Law § 292(6).

### *Defendant Nathan Butwin Company Inc. d/b/a Butwin Insurance Group*

16.     Nathan Butwin Company Inc. was and still is a domestic corporation authorized to do business pursuant to the laws of the State of New York.

17.     Nathan Butwin Company Inc. was and still is doing business as Butwin Insurance Group.

3

18.   Butwin Insurance Group is an insurance brokerage located in Nassau County, New York.

19.   At all times hereinafter mentioned, Butwin Insurance Group was and still is an "employer" within the meaning of 42 U.S.C. § 12111(5) and the N.Y. Exec. Law § 292(5).

**Defendant Richard Butwin**

20.   Richard Butwin is the Chairman and Chief Executive Officer of Butwin Insurance Group.

21.   Mr. Butwin owns Butwin Insurance Group and, as its owner, exercises control over its day-to-day operations, including all compensation and personnel decisions.

22.   Mr. Butwin has authority over personnel decisions for Butwin, and those decisions are his own — not decisions made by others that he merely carries out.

23.   Richard Butwin owns and/or operates Butwin Insurance Group.

24.   Richard Butwin is a shareholder of Butwin Insurance Group.

25.   Richard Butwin has authority over personnel decisions for Butwin Insurance Group.

26.   Richard Butwin supervises employees of Butwin Insurance Group.

27.   Richard Butwin has the authority to hire and fire employees of Butwin Insurance Group.

28.   Richard Butwin has authority over payroll decisions for Butwin.

29.   Richard Butwin has power to make binding decisions for Butwin Insurance Group.

30.   Richard Butwin was and still is an "employer" within the meaning of all applicable statutes.

4

**FACTS**

*Ackerman's Employment at Butwin Insurance Group*

31.    Ackerman is an experienced and well-regarded licensed insurance broker specializing in personal insurance.

32.    Butwin Insurance Group hired Ackerman on April 24, 2022, as an Account Executive.

33.    Upon hire, Ackerman's position was described and understood by both parties as a remote-work position.

34.    Throughout her employment, Ackerman consistently performed well.

35.    Butwin conducted annual performance reviews each April. Every review was positive and resulted in a salary increase. By the time of her termination in June 2025, Ackerman's salary had increased by 20% with a 401(k) bonus contribution equal to approximately 8% of her salary.

36.    In April 2025, just two months before her termination, Butwin Insurance Group gave Ackerman a salary increase and a benefits enhancement.

37.    Ackerman received new and prestigious account assignments throughout her tenure, including in the weeks before her termination.

38.    Ackerman never received a written warning, a disciplinary action, or a negative performance review during her employment.

*Ackerman's Cancer Diagnosis and Treatment*

39.    In May 2024, Ackerman was diagnosed with tonsil cancer, a form of head and neck cancer.

40.     Ackerman immediately told Butwin Insurance Group and Richard Butwin of her diagnosis and provided detailed information about her upcoming treatment.

41.     Ackerman's prescribed treatment was intensive and debilitating: seven weeks of radiation and six weeks of chemotherapy, beginning in June 2024 and continuing through early August 2024.

42.     Ackerman's cancer treatment caused severe side effects, including an inability to eat that necessitated the insertion of a feeding tube.

43.     Ackerman initially worked through her treatment. After approximately three weeks, however, she could no longer speak with clients by telephone due to the treatment's effects.

44.     While Ackerman was undergoing cancer treatment, Richard Butwin called her on two separate occasions to ask how she was doing and discuss what the future might look like.

45.     During both calls, Richard Butwin told Ackerman that he was "still running a business."

46.     Ackerman reported these comments to Comple.

47.     She took disability leave beginning in or around July 2024.

48.     Ackerman returned from disability leave in or around September 2024 and resumed working continuously in a remote capacity from October 2024 forward.

49.     Following active treatment, Ackerman continued to require PET scans and experienced ongoing fatigue and other side effects from the radiation and chemotherapy.

***Defendants' Demand for In-Person Work and Failure to Accommodate***

50.     Ackerman and her colleagues in the Butwin Insurance Group's Personal Lines department were fully remote until December 2024, when employees were required to come in

6

once per month on a Wednesday, which Ackerman did through the remainder of the month, as well as January and most of February 2025.

51.    On January 28, 2025, Ackerman emailed Comple advising that she could not come into the office due to fatigue that was still affecting her, as one day per week in the office was still challenging for her. Ackerman was able to perform her duties remotely.

52.    On February 25, 2025, Comple notified Ackerman and the rest of the team that every Wednesday would be mandatory for in-office work and that each employee also had to select one additional in-person day per week.

53.    On February 27, 2025, Ackerman could not come in, initially citing her puppy as the reason. Ackerman later clarified by telling Comple that her health was the real reason and that she was not feeling well enough to come in, providing Defendants with further notice of her medical limitations.

54.    On March 10, 2025, Ackerman provided Comple with a letter from her doctor recommending that she not work in-person for at least two months due to her ongoing medical needs. Comple told Ackerman she would forward the note to Richard Butwin. Ackerman received no response—the request was neither approved nor denied. Based on her medical needs, Ackerman did not come into the office during that period, and continued working remotely.

55.    Once the two-month period ended on May 7, 2025, Richard Butwin and Comple pressured Ackerman to return to the office despite her continued pain and fatigue.

56.    On May 15, 2025, Ackerman told Comple she could still not meet the two-day requirement but was coming in approximately one day per week based on what she could physically manage.

57. Other account executives who lived further from the office than Ackerman were not required to comply with the in-person policy.

58. At least six employees in Ackerman's department, including Comple, were permitted to work from remotely almost exclusively.

59. Some Butwin Insurance Group employees were permitted to leave the office early to work remotely due to their childcare responsibilities.

60. Yet, Defendants continued to pressure Ackerman to be in the office more regularly.

61. Neither Richard Butwin nor anyone else at Butwin Insurance Group engaged in any individualized assessment or good-faith interactive process to identify a reasonable accommodation for Ackerman's disability.

62. On June 4, 2025, Ackerman told Comple she could not come in that day due to an earache caused by her radiation treatment. Comple responded, "I thought your radiation was over," and did not address the request.

**Richard Butwin's Discriminatory Comments**

63. After Ackerman returned from cancer treatment, Richard Butwin made demeaning comments about her physical appearance and mental condition that directly referenced the effects of her cancer and treatment.

64. On one occasion, Richard Butwin called Ackerman into his office and, as soon as she sat down, told her "you look like shit."

65. On a separate occasion, as Ackerman was leaving the kitchen and walking back to her desk, Richard Butwin told her that she "lost [her] ass"—a comment that directly referenced the physical effects of her cancer treatment.

8

66.     Ackerman reported these comments to Comple and coworkers.

67.     Comple responded that Richard Butwin "is so awkward with words"—dismissing Ackerman's complaint rather than addressing it.

*Ackerman's Termination*

68.     On June 6, 2025, Richard Butwin fired Ackerman during a meeting, which Ackerman recorded.

69.     The recording captures Richard Butwin opening the meeting by saying "shit happens."

70.     He then told Ackerman that her medical condition "is starting to affect [her] work," and that she was "not the same mentally."

71.     Richard Butwin attributed alleged client complaints to Ackerman's "lack of concentration."

72.     Ackerman had never previously received any feedback from Richard Butwin or Comple about concentration issues or any other performance deficiency.

73.     Richard Butwin's stated justifications for the termination were pretextual. Two months before firing Ackerman, he gave her a raise and a benefits enhancement. Comple told Ackerman and her team they were "rockstars" in the period immediately before the termination.

74.      Ackerman continued to receive new account assignments through the date of her termination.

75.     At the close of the termination meeting, Mr. Butwin told Ackerman, "I am not firing you, I think this is best for you." Despite that characterization, Ackerman's employment ended one week later.

76.     Richard Butwin offered Ackerman severance in exchange for signing a release.

77.     When Ackerman refused to sign the release, Richard Butwin advised Ackerman she "voluntarily resigned," effective June 13, 2025.

78.     As a result of Defendants' conduct, Ackerman has suffered lost wages, lost benefits, emotional distress, humiliation, and damage to her professional reputation.

**FIRST CAUSE OF ACTION**
**Disability Discrimination – Wrongful Termination**
**In Violation of the ADA**

79.     Ackerman realleges and incorporates by reference all allegations in all preceding paragraphs.

80.     Butwin Insurance Group employs more than fifteen people and is subject to the ADA.

81.     Ackerman's tonsil cancer and the lasting effects of her treatment rendered her disabled within the meaning of the ADA.

82.     In the alternative, Butwin Insurance Group regarded and perceived Ackerman as disabled. Richard Butwin's statements during the June 6, 2025 termination meeting—that Ackerman was "not the same mentally" and that her "lack of concentration" had generated client complaints—establish that Butwin Insurance Group perceived her as cognitively impaired, a perceived disability separate and apart from her cancer diagnosis. That perceived disability is not transitory or minor.

83.     Butwin Insurance Group was aware of Ackerman's disability.

84.     Butwin Insurance Group perceived Ackerman as disabled.

85.    Ackerman was a qualified individual who could perform the essential functions of her position, as demonstrated by her positive performance reviews, salary increases, and new account assignments through the date of her termination.

86.    Butwin Insurance Group intentionally discriminated against Ackerman by terminating her because of her disability and/or because they regarded her as disabled.

87.    Butwin Insurance Group knew their actions constituted unlawful discrimination and/or showed reckless disregard for Ackerman's statutorily protected rights.

88.    As a result of Butwin Insurance Group's discrimination, Ackerman suffered severe damages, including lost income and benefits, lost opportunity for advancement, and emotional distress.

**SECOND CAUSE OF ACTION**
**Failure to Accommodate**
**In Violation of the ADA**

89.    Ackerman realleges and incorporates by reference all allegations in all preceding paragraphs.

90.    Ackerman's tonsil cancer and the lasting effects of her treatment rendered her disabled within the meaning of the ADA.

91.    Butwin Insurance Group was aware of Ackerman's disability.

92.    With a reasonable accommodation—specifically, the continuation of her existing remote work arrangement—Ackerman could perform the essential functions of her position, as her sustained performance during the period of remote work confirmed.

93.    By the acts and practices alleged above, Butwin Insurance Group violated their duty to engage in an interactive process with Ackerman to identify a reasonable accommodation.

94.    Butwin Insurance Group refused to accommodate Ackerman, instead demanding in-person attendance that her medical condition prevented, while permitting her manager and other colleagues to work remotely.

95.    Butwin Insurance Group knew their actions constituted unlawful discrimination and/or showed reckless disregard for Ackerman's statutorily protected rights.

96.    Butwin Insurance Group's failure to accommodate was a but-for cause of the termination of Ackerman's employment.

97.    As a result of Butwin Insurance Group's failure to accommodate, Ackerman suffered severe damages, including lost income and benefits, lost opportunity for advancement, and emotional distress.

**THIRD CAUSE OF ACTION**
**Disability Discrimination – Wrongful Termination**
**In Violation of the NYSHRL**

98.    Ackerman realleges and incorporates by reference all allegations in all preceding paragraphs.

99.    Ackerman's tonsil cancer and the lasting effects of her treatment rendered her disabled within the meaning of the NYSHRL.

100.    Defendants were aware of Ackerman's disability.

101.    Defendants regarded Ackerman as disabled.

102.    Defendants intentionally discriminated against Ackerman because of her disability, treating her less well than other employees because of her disability.

103.    By the acts and practices alleged above, Defendants violated their duty to engage in an interactive process with Ackerman to identify a reasonable accommodation.

104.    Defendants failed to provide Ackerman with a reasonable accommodation.

105. Defendants took an adverse employment action against Ackerman because she was disabled or regarded as disabled.

106. Defendants knew their actions constituted unlawful discrimination and/or showed reckless disregard for Ackerman's statutorily protected rights.

107. As a result of Defendants' discrimination, Ackerman suffered severe damages, including lost income and benefits, lost opportunity for advancement, and emotional distress.

## DEMAND FOR JURY TRIAL

108. Ackerman demands a trial by jury for all issues in this action.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Lee Ackerman demands that a judgment be entered in her favor and that the Court order and award Ackerman the following relief:

A. A declaratory judgment that Defendants' actions, conduct, and practices complained of herein violate the laws of the United States, and the State of New York;

B. An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all monetary and/or economic damages;

C. An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Plaintiff's emotional distress;

D. An award of punitive damages in an amount to be determined at trial;

E. Pre-judgment interest on all amounts due;

F. An award of Ackerman's reasonable attorneys' fees and costs; and

G.      Such other and further relief as the Court may deem just and proper.

Dated: Melville, New York
      April 14, 2026                    Respectfully submitted,


By:/s/  Troy L. Kessler
        Troy L. Kessler

**KESSLER MATURA P.C.**
Troy L. Kessler
534 Broadhollow Road, Suite 275
Melville, New York 11747
(631) 499-9100
tkessler@kesslermatura.com

***Attorneys for Plaintiff***

14